Perry S. WOOD et al., Plaintiffs,

v.

SECRETARY OF DEFENSE et al., Defendants.

Civ. A. No. 77–0684.

United States District Court, District of Columbia.

Aug. 25, 1980.

Ronald Simon, Barton F. Stichman, David F. Addlestone, National Military Discharge Review Project, Washington, D. C., for plaintiffs.

Stephen S. Cowen, Asst. U. S. Atty., Washington, D. C., Kenneth M. Raisler, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

This action challenges the authority of the military to issue less than fully honorable administrative discharges [1] to members of the inactive reserves because of civilian misconduct not found to have affected adversely the quality of their military service. The four plaintiffs were issued such discharges for civilian misconduct ranging from an alleged and unprosecuted sexual offense to a conviction for unarmed robbery. They argue that the Department of Defense (DOD) policy underlying their discharges exceeds the military's statutory and constitutional authority in that it does not require a connection between their civilian misconduct and their military service. The plaintiffs seek a declaratory judgment and an injunction requiring the DOD officials to review and upgrade their discharges unless the civilian misconduct relied upon is found to have affected their military service. They also seek certification of this suit as a class action on behalf of similarly situated former members of the inactive reserves. Named as defendants are the Secretary of Defense and the Secretaries of the three services—the Navy, the Army, and the Air Force.

Cross motions for summary judgment have been filed. In addition, the Army has moved to dismiss or for summary judgment on grounds that it no longer engages in the practice complained of. All of the defendants have raised a statute of limitations defense under 28 U.S.C. § 2401(a) seeking dismissal of the complaint.

The Court rules for the plaintiffs and concludes that the DOD regulation and policy as applied, characterizing plaintiffs' discharges as less than honorable without any finding of adverse impact, exceeds the defendants' statutory authority. The Court also grants plaintiffs' motion for class certification. The Army's motion to dismiss is denied and the defendants' statute of limitations defense is rejected. The proceeding is remanded to the DOD in light of this opinion for appropriate action.

### I.

The material facts are not in dispute. The four individual plaintiffs were all members of the inactive reserves. As such, they had no military obligations, not even to attend drills or training weekends. They were not required to perform any duties other than keeping the military informed of their current addresses.

Plaintiff Wood, after nearly three years of active duty during which he received the Silver and Bronze Stars, was released to inactive duty with an honorable discharge. Several years later while a member of the volunteer reserve, he was placed on probation by a civilian court after pleading guilty to contributing to the delinquency of a minor, a misdemeanor. He was subsequently

---

1. There are three types of administrative discharge—honorable, general (sometimes referred to as under honorable conditions), and under other than honorable conditions (until recently referred to as an undesirable discharge). For purposes of simplicity and consistency, the Court will refer to the discharge under other than honorable conditions as an undesirable discharge regardless of the time-period.

Administrative discharges are not congressionally authorized but stem from a Department of Defense directive. The derogatory discharges expressly authorized by Congress are the bad conduct and dishonorable discharges, both imposed solely by sentence of a court-martial.

issued an undesirable discharge [2] for "misconduct." No finding was made that his activities affected the quality of his military service. After a period of successful probation, he was allowed to substitute a not guilty plea and the misdemeanor charge was dismissed.

Plaintiff Akers was similarly released from active duty to the inactive reserves with an honorable discharge. Shortly thereafter, criminal sodomy charges were brought against him. They were later dropped. Nonetheless as a result of those charges and the circumstances, Akers was subsequently separated from the inactive reserves with an undesirable discharge for "unfitness." [3] His undesirable discharge was later upgraded to a general discharge by a Naval administrative review agency.

Plaintiffs Kruger and Conomos, whose active duty service was characterized as general and honorable respectively, were released from the inactive reserves following civilian felony convictions. Kruger received an undesirable discharge following a grand larceny conviction. Conomos received a similar discharge for an unarmed robbery conviction. Each served a prison term.

After discharge, each plaintiff was denied a full upgrade in discharge by one or more administrative review agencies of the military. At no time during any of the administrative review proceedings, in which the four plaintiffs challenged the characterization of their discharges, was a finding made that the civilian "misconduct" affected the quality of the individual plaintiff's military service or the service generally.

## II.

The DOD Directive [4] in question and at issue here creates a presumption that a discharge for "misconduct" shall be "under other than honorable conditions," i. e., an undesirable. Specifically, the Directive provides that a servicemember's discharge for specified types of misconduct [5] rendering him unqualified for further military service shall be a

[s]eparation under other than honorable conditions, unless the particular circumstances in a given case warrant a general or an honorable discharge. . . .

Only recently in *Roelofs v. Secretary of the Air Force* [6] our Court of Appeals upheld an Air Force regulation [7] nearly identical to the Directive challenged here as authority for the issuance of a general discharge to a servicemember convicted of a federal narcotics offense while on active duty. Roelofs

---

2. Upon release from active duty, servicemembers receive a discharge certificate characterizing their active duty. The individual does not receive a discharge characterizing the entire period of military service, including active duty, however, until separation from the reserves. The vast majority of those who are released to inactive duty have had their service characterized as honorable at the time of release.

3. Prior to 1975, the conduct and conditions now labeled "misconduct" were subdivided into two separate categorical bases for dismissal—"unfitness" and "misconduct." In 1975, the two categories were combined under the heading of "misconduct."

4. Department of Defense Directive 1332.14, December 29, 1976, as amended by Change 1.

5. Nine categories of acts or conditions are included under the "misconduct" heading. Among them in abbreviated form are frequent involvement of a discreditable nature with civil or military authorities, an established pattern for shirking, sexual perversion, drug abuse, and "[c]onviction by civil authorities . . . , or action taken which is tantamount to a finding of guilty, of an offense for which the maximum penalty under the Uniform Code of Military Justice . . . is death or confinement for one year or more; or which involves moral turpitude; or where the offender is adjudged a juvenile delinquent, wayward minor, or youthful offender, or is placed on probation, or punished in any way, as the result of an offense involving moral turpitude. . . .

6. 628 F.2d 594 (D.C.Cir. 1980).

7. The Air Force regulation provides in pertinent part:

An airman discharged under this section should be furnished an undesirable discharge, unless the particular circumstances in a given case warrant a general or honorable discharge.
⁴ 2–25 of AFM 39–12, § c, JA 14.

was sentenced to 18 months imprisonment, followed by probation for 3 years. The execution of the sentence was stayed to enable Roelofs to complete his military service. Before he did so, the Air Force discharged him administratively, issuing an undesirable discharge because of his conviction. Roelofs later applied for and was granted an upgrade in discharge characterization to a general discharge.[8]

Roelofs' judicial challenge to his general discharge was virtually identical to that advanced by the plaintiffs. He contended that the Air Force exceeded its authority in issuing him a less than honorable discharge for civilian misconduct without considering the impact of that conduct on the quality of his military service. Because of the similarity of the issues in the two cases, *Roelofs* provides the legal framework and serves as a guide to the Court for resolution of this proceeding.

Roelofs was on active-duty when charged with and convicted of criminal activity. He was thus subject to military authority 24 hours a day and "expected to respond on short notice and without restriction to orders that might direct expeditious movement from one location to another . . ." *Crawford v. Cushman*, 531 F.2d 1114, 1117 (2d Cir. 1976). To an active duty servicemember, "the Government is often employer, landlord, provisioner and lawgiver rolled into one." *Parker v. Levy*, 417 U.S. 733, 751, 94 S.Ct. 2547, 2559, 41 L.Ed.2d 439 (1974).

 *Roelofs* makes clear that a discharge for civilian misconduct cannot be characterized as less than honorable absent a showing that the misconduct in some fashion adversely affects the military. The court distinguished between the showing necessary to support a general and an undesirable discharge. For the former, the mili-

tary need show that the misconduct had an impact on "the overall effectiveness of the military." At 598. For the latter, the conduct must be "service-related." At 598.

The court found the Air Force regulation reasonable in its indication that a good record would warrant either an honorable or general discharge, thus creating the clear impression that

> an undesirable discharge indicates the *absence* of a good record of performance in the service. This is an adverse finding, over and above the stigma of the felony, because it is equivalent to a finding that the serviceman has performed inadequately on the job. The presumption that an undesirable discharge will result from a civilian conviction is warranted if it results in deficiency in performance of military duties or has a direct impact upon military service.

At 599 (emphasis in original).

Since Roelofs retained a general discharge, the Air Force could take into account "the impact of his 'outside' actions in diminishing the overall effectiveness of the military."[9] At 598. The Court of Appeals offered two reasons why a general discharge could be issued Roelofs even though his narcotics conviction was not directly related to the quality of his particular performance of assigned chores. First, it considered a general discharge less deleterious ("different in kind") than an undesirable discharge. Second, it found the stigma of a general discharge comparable to that already borne by the felon. At 598. The court emphasized that its consideration of the regulation was limited to the application presented by Roelofs' case, namely:

> the issuance of a general discharge for an act that is a felony under Federal law.

---

8. Because neither of the administrative review agencies that considered Roelofs' discharge characterization gave reasons for denying an upgrade to a fully honorable discharge, the Court of Appeals remanded his case to the appropriate Air Force authority for such a statement, as required by the Administrative Procedure Act, 5 U.S.C. § 555(e).

9. The Court observed that Roelofs' misconduct had a relatively direct impact upon military efficiency. His prison sentence prevented the Air Force from seeking to renew his term. In addition, his drug activity involved another servicemember directly and had the potential to involve others. At 598.

We are not concerned with other provisions or applications of the regulation, such as discharge for an offense that involves moral turpitude.

\* \* \* \* \* \*

We do not have here a case where an *undesirable* discharge was issued based upon conduct which was not "service-related."

At 597 (emphasis in original).

■ Nor was the court presented with the application of the regulation to the discharge characterization of inactive reservists. The critically differing nexus with the military between the active duty serviceman and the inactive reservists compels under *Roelofs* differing treatment of their discharge characterizations. In their reconsideration of this matter the defendants must consider whether the varying acts of "misconduct" for which plaintiffs and the various class members were discharged, had a sufficient impact, under the standards set forth in *Roelofs*, to justify the particular discharge characterizations they now possess.

*Roelofs* makes clear that the DOD Directive's presumption of the issuance of an undesirable discharge for civilian misconduct when applied to inactive reservists exceeds the military's authority. Since an undesirable discharge "is equivalent to a finding that the serviceman has performed inadequately on the job," at 599, and an inactive reservist has no military job, such misconduct cannot result in deficiency in performance of his military duties or have a direct impact upon his military service. Similarly, defendants cannot and indeed have not sought to defend the issuance of a general discharge on grounds of a generalized nexus between the civilian misconduct and military morale and efficiency. Since inactive reservists live where they choose and have no scheduled contact, it is hard to conceive how their morale or efficiency would be affected by the misconduct of a fellow inactive reservist. While plaintiffs do not dispute the possibility that in some cases the defendants may be able to justify the issuance of a less than honorable discharge for civilian conduct, such occurrence should be the exception and not, as it is now, the rule.

Defendants' sole attempt to establish a generalized nexus between plaintiffs' "misconduct" and the military is their assertion that such conduct inherently affects an alleged duty to maintain availability for service in the event of call up.[10] Under that theory, plaintiffs Kruger and Conomos violated their duty because of incarceration; Wood because of his probation status; and Akers because of alleged deviant sexual practices for which he was not prosecuted.

The Court is not persuaded by that argument. First, the defendants have not demonstrated the existence of such a duty.[11] The argument is not a justification for the

---

10. The defendant Secretary of Defense has stated:

> A reservist is primarily a civilian and secondarily a military person.
>
> \* \* \* \* \* \*
>
> The Military Departments are concerned with his activities as a reservist and not with his activities as a civilian. However, if a reservist is sentenced to imprisonment for certain criminal acts, committed while in civilian status, which preclude him from attending required training or which significantly affect his qualifications for military service, he will be discharged administratively. In this event, discharge is based on the reservist's non-attendance and failure to perform which, in turn, result in his failure to maintain his military proficiency. Thus discharge is based on his unsatisfactory military performance and his unavailability for mili-

tary service in case of a need for his service on active duty.

Defendants' Answers to Plaintiffs' Second Interrogatories filed November 7, 1977, Response to Interrogatory No. 6.

Since inactive reservists have no training obligations, the only possible justification, under the Secretary's analysis, for applying the DOD Directive to issue them a derogatory discharge is possible unavailability for call up.

11. The statutory basis proffered by the defendants, 10 U.S.C. § 672, is questionable for such an alleged obligation. That section specifies when an inactive reservist may be called to active duty, i. e., "[i]n time of war or of national emergency . . . or when otherwise authorized by law . . . ." In any event, it does not require full-time availability when no such specified period exists.

DOD Directive since the rationale for the grading of discharges is not related to whether the reservist is actually available. The availability argument is at best a post hoc rationalization that was not considered or applied when defendants graded plaintiffs' discharges or when they reviewed them. Finally, the defendants do not suggest that plaintiffs would not have been available for call up in the event of war, nor were any of them called up.

Also, several of defendants' own admissions weaken their position. They concede and indeed have stipulated that no effort is made to monitor the conduct of inactive reservists. There are no established procedures or notification requirements if an inactive reservist is involved in or charged with criminal conduct by civilian authorities.[12] If the military were concerned with inactive reservists' availability, it would likely monitor their conduct. In addition, defendants have stipulated that there is no requirement that such misconduct have affected the reservists' military service. They nonetheless press the argument that the plaintiffs' misconduct interfered with their one obligation, that of continued availability.

More than 20 years ago a commentary in the *Military Law Review* recognized that the fundamentally differing obligations of active duty soldiers and inactive reservists critically affects the military's authority to characterize their discharges. In discussing *Harmon v. Brucker*, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958), which held that the military could not consider preservice activities in characterizing a servicemember's discharge from active duty, the author analogized such preservice activities of the active duty serviceman with the conduct of the inactive reservist while a member of the civilian community. He concluded that while conduct which occurred while a reservist was on scheduled drills could be considered a part of his record of military service and thus relevant to his discharge characterization, consideration of all other conduct would fall "within the prohibition of the *Harmon* decision."[13]

And indeed, so remote is the connection between an inactive reservist's civilian conduct and the military, that the Judge Advocate General of the Army has interpreted its regulations "as precluding issuance of a less than honorable discharge to an inactive reservist for civilian misconduct."[14] The individual is issued an honorable discharge if his military record otherwise warrants it. Inactive reservists sentenced to confinement by civilian authorities are not issued a discharge certificate at all but instead simply dropped from the rolls.

From all that appears in this record and on the strength of legal authority, it appears to this Court that the Department of Defense has exceeded its authority and that its position and actions cannot be sustained as a matter of law.

### III.

Defendants also argue that this action is barred by the six year statute of limitations, 28 U.S.C. § 2401(a). The issue is twofold—whether that section should apply at all since this action to correct less than fully honorable administrative discharges seeks only declaratory and injunctive relief;[15] and if so, when plaintiffs' claims accrued. The defendants contend that

---

12. Defendants' Answers to Plaintiffs' Second Interrogatories filed November 7, 1977, Response to Interrogatory No. 6.

13. Comment, *Judicial Review of Administrative Discretion—Characterization of Discharge*, 4 Military Law Review 123, 134 (Department of the Army Pamphlet No. 27–100–4, April 1959).

14. *Statement of Material Facts* filed with the Army's February 9, 1979 Motion to Dismiss or for Summary Judgment, ‵. 3.

15. This issue is pending before our Court of Appeals in *Baxter v. Claytor*, No. 77–1984. The court had initially held in that proceeding that section 2401(a) did not apply to actions for the correction of less than honorable discharge certificates and that such actions could be brought at any time after discharge. That opinion of December 18, 1978, reached without oral argument and without extensive briefing, was vacated upon the Navy Secretary's petition for rehearing.

plaintiffs' claims accrued on the dates of their discharges from the inactive reserves and are therefore barred since each plaintiff was discharged more than six years before this suit was brought.

■ The Court concludes that section 2401(a) does not apply to actions such as this seeking only declaratory and injunctive relief to correct less than fully honorable discharge certificates.[16] Alternatively, the Court holds that if it does apply, plaintiffs' claims did not accrue until the respective military discharge review boards or boards for correction of military records denied them upgrades to a fully honorable discharge, which occurred within six years of their filing of this action.

■ Plaintiffs also seek certification of this case as a class action on behalf of former servicemembers with less than fully honorable discharges, so characterized when they were administratively separated from the service because of their conduct as inactive reservists and who were either discharged on or after April 20, 1971, or whose cases on review were decided on or after April 20, 1971. The class certification requirements of Rule 23(a) and (b)(2), Fed.R. Civ.P. have been satisfied and the motion seeking certification should be granted.

The defendants concede the numerosity requirement and the qualifications of plaintiffs' counsel to pursue this litigation. The Court does not agree with defendants' contention that the commonality and typicality requirements have not been satisfied. Common legal questions concerning the lawfulness of DOD policy and the implementing directives are presented. Further, the factual question of the stigmatizing effects of a less than honorable discharge is common to all such members. Thus, common questions predominate over the varying circumstances that may surround the individual reservist's discharge. The typicality requirement is satisfied since the named plaintiffs' claims are based on the same legal theory as that of the class and since plaintiffs have no material interests in conflict with those of the class.

Finally, the Court determines that the Army's motion to dismiss should be denied. The Army asserts that since at least 1971 it has not issued inactive reservists less than honorable administrative discharges for civilian misconduct. Rather, if the reservist's military record otherwise warrants an honorable discharge, he is issued one unless his misconduct results in confinement by civilian authorities. In that case, he is dropped from the rolls without a formal discharge certificate.

While the Army has submitted supporting affidavits for that claim, the above described does not address the treatment afforded inactive reservists whose cases have been reviewed by the Army Discharge Review Board or the Board for Correction of Military Records since April, 1971. These persons are also potential class members. In addition, as to the first category, the inactive reservist discharged since 1971, the Army states that such individual could obtain relief through the Army discharge review agencies if erroneously issued a less than honorable discharge in violation of Army practice. Such assurance is not the sort of evidence upon which the Court would grant the defendant's motion.

For the foregoing reasons, the Court denies the Army's motion to dismiss, and the defendants' motion for summary judgment. The plaintiffs' motions for summary judgment and class certification are granted. Plaintiffs' cases are remanded to the services and they are instructed to review each case to determine whether proper grounds existed for the issuance of a less than honorable discharge, taking into account that:

1) an undesirable discharge can only be based on conduct found to have affected directly the performance of military duties;

2) a general discharge can only be based upon conduct found to have had an adverse impact on the overall effectiveness of the

---

**16.** The Court is also of the opinion that this action, which has been pending for more than three years, should not be further delayed pending a ruling by our Court of Appeals in *Baxter v. Claytor.*

military, including military morale and efficiency;

3) where the proper grounds do not exist for the issuance of a less than honorable discharge, an honorable discharge should be issued;

4) if a fully honorable discharge is denied, such denial shall be accompanied by a statement of reasons as required by the Administrative Procedure Act, 5 U.S.C. § 555(e).

An Order and Judgment will be entered in accordance with this Memorandum Opinion.