John D. SNAKENBERG,

v.

The UNITED STATES.

No. 296-87C.

United States Claims Court.

Nov. 30, 1988.

---

Randall B. Clark, Houston, Tex., for plaintiff.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. CDR Ronald Scholz and Lt. Dennis Argall, Dept. of the Navy, of counsel.

## OPINION

MARGOLIS, Judge.

This military back pay case is before the court on plaintiff's motion for summary judgment and defendant's cross motion for summary judgment. Plaintiff, John D. Snakenberg, was given a general discharge from the United States Marine Corps on September 3, 1985. On May 26, 1987, plaintiff filed this action seeking back pay, an order correcting plaintiff's record and reinstating him in the Marines, equitable and punitive relief, and attorney's fees and costs. After careful review of the administrative record and after hearing oral argument, the court concludes that the military followed proper procedures in discharging plaintiff. Because this court finds that plaintiff's discharge was neither arbitrary, capricious, nor contrary to law and that the Marine Corps' decision was supported by substantial evidence, defendant's cross motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied.

## FACTS

In May 1984, plaintiff, then a major in the United States Marine Corps, placed an advertisement in South Carolina's local Beaufort Gazette, soliciting women to model bathing suits for a fee of twenty-five dollars per hour. Several women responded to the advertisement and were instructed to come to plaintiff's home on May 29, 1984 to model the swimsuits. Upon their arrival, plaintiff requested each woman to try on the swimsuits he owned for the alleged purpose of selecting suitable models. Plaintiff explained to the women that he intended to sell their pictures to major bathing suit manufacturers for use in their catalogues. Plaintiff videotaped these women without their knowledge or consent with a videocamera hidden in his bedroom closet. One of the women who answered the advertisement discovered the videocamera, removed the videotape and reported plaintiff's actions to the Beaufort County Sheriff's Department. The Beaufort Coun-

ty Sheriff's Department then arrested and charged plaintiff with a peeping tom violation under South Carolina law.

In a search of plaintiff's residence, the Sheriff's Department seized 162 videocassette tapes, 22 swimsuits and a variety of video and photographic equipment. This search was conducted pursuant to a valid warrant. The videotape that the woman removed from plaintiff's videocassette recorder revealed six women, among them a 17 year old girl, who undressed and tried on bathing suits. Plaintiff stated that the videocamera served only to ensure that his 22 bathing suits, worth twenty to forty dollars each, were not stolen. Plaintiff explained that he originally positioned the camera so that it would not film the women while they were undressing. He further stated that the camera came to focus upon the women's dressing area through no act of his own, but rather because the tautness of the power cord produced a shift in the camera's angle. The criminal charges brought against plaintiff were eventually dismissed because his conduct did not violate South Carolina criminal law. Three of the women filmed, however, brought civil suits against plaintiff for invasion of privacy and intentional infliction of emotional distress or mental anguish. The plaintiff settled these suits for $5,000, $2,500, and $1,750.

The Commandant of the Marine Corps convened a Board of Inquiry (BOI) on January 9, 1985 to investigate the plaintiff's conduct. In its report of May 20, 1985, the BOI concluded that plaintiff was guilty of two counts of misconduct: 1) conduct unbecoming an officer and gentleman and 2) sexual perversion. The BOI recommended that plaintiff be discharged "under other than honorable conditions." In support of its conclusion, the BOI found that the plaintiff: 1) owned ninety-four triple-x rated movies that were seized during the Beaufort County Sheriff's Department search; 2) regularly loaned out these movies to junior officers and enlisted Marines; 3) was involved in "green lighting"[1] episodes; and

---

**1.** "Green lighting" episodes occur when a Marine receives a phone call in the middle of the

4) settled the three civil suits brought against him. These findings led the BOI to conclude that plaintiff's explanation, that his secret videotaping of the women was purely for security reasons, was "not worthy of belief." The BOI thus concluded that plaintiff purposely positioned his camera to film the women undressing.

On July 5, 1985, a Board of Review adopted the BOI's findings and recommendations. The Assistant Secretary of the Navy on August 21, 1985 upgraded plaintiff's separation to a general discharge and on September 3, 1985, plaintiff was involuntarily separated from the United States Marine Corps. Upon a review of the BOI's decision, the Board for Correction of Naval Records (BCNR), on April 24, 1986, concluded that plaintiff's discharge was "neither erroneous nor unjust" and, therefore, affirmed the decision. On June 3, 1986, the BCNR refused to reconsider plaintiff's claim. Having exhausted administrative remedies, plaintiff filed this action seeking: 1) active duty back pay, plus all allowances and interest; 2) an order setting aside the BOI's findings, correcting plaintiff's military record, and reinstating him in the Marines at the rank of Lt. Colonel; 3) equitable and punitive relief; and 4) attorney's fees and costs.

## DISCUSSION

A. *The Right to Notification of Evidence*

Plaintiff asserts that he was denied due process of law because he was not adequately notified of the reasons considered by the BOI in his discharge proceeding as required by Marine Corps regulations and was not given an adequate opportunity to prepare a defense. The Marine Corps notified him that the only matters being considered were the two charges of misconduct: 1) conduct unbecoming an officer and a gentleman; and 2) sexual perversion. The BOI, however, supported its conclusion that plaintiff intended to film the women undressing, and was therefore guilty of misconduct, with evidence that plaintiff owned pornographic movies, loaned them to other Marines, and settled the three civil suits brought by some of the women he secretly filmed. Consequently, plaintiff argues that the Marine Corps violated regulations for notifying Marines of reasons for possible discharge, promulgated in the Marine Corps Separation and Retirement Manual (MARCORSEPMAN) ¶ 4302.4 (Oct. 4, 1982) (revised March 21, 1984 and May 1, 1984) and Secretary of the Navy Instruction (SECNAVINST) 1920.6A encl. 8, p. 7 § 5 (Nov. 21, 1983) (revised CH–1 April 17, 1984), when plaintiff was not notified of this additional evidence. Plaintiff bases his due process argument on *Fairchild v. Lehman,* 609 F.Supp. 287 (E.D.Va.1985), *aff'd,* 814 F.2d 1555 (Fed. Cir.1987), in which the Marine Corps notified a Marine that marijuana use was the sole reason for convening a discharge board, even though eventually the separation was also based on other unrelated minor disciplinary violations. *Id.* at 291.

The facts of this case, however, are distinguishable from *Fairchild.* In *Fairchild,* plaintiff was not notified of the additional reasons for his discharge—unrelated minor disciplinary violations. As a result, the court found that because plaintiff was not aware of the second and unrelated basis for his discharge until one day before the hearing, he was unable to prepare an adequate defense and, therefore, was denied due process. Here, however, plaintiff was able to adequately prepare his case because he was notified of the sole basis for his discharge—his secret filming of the women while they were undressing and trying on bathing suits. It is the consideration of *additional evidence* that plaintiff now challenges, not *additional reasons* for the discharge. The holding in *Fairchild* and the Marine Corps regulations only require notification of the reasons for discharge, not evidence utilized to support these reasons. Therefore, unlike the plain-

---

night and hears the word "greenlight." This call signals that a group of Marines who have been out on the town will arrive shortly and expect to be provided with additional drinks, food or whatever else the group desires. If the Marine does not allow the group entry, members of the group climb on the Marine's roof and stomp until he is awakened.

tiff in *Fairchild*, plaintiff here was properly notified of the reasons for his discharge.

■ Also, plaintiff's argument that he was not aware that the BOI would rely on additional evidence is of no moment. Plaintiff waived future objection to the utilization of such evidence by failing to make a timely objection at the discharge hearing.[2] *See Merson v. United States*, 185 Ct.Cl. 48, 58, 401 F.2d 184, 189 (1968) (ruling that the government waived any possible objection to evidence by failing to object at its introduction); *Moylan v. Department of Transportation, FAA*, 735 F.2d 524, 525 (Fed. Cir.1984). Plaintiff did not make a timely objection to the BOI's consideration of this evidence, although he had the opportunity to do so at the hearing.

In addition, plaintiff consented to the consideration of the evidence to which he now objects by utilizing it in his own defense.[3] Plaintiff cannot rely on evidence for his own purposes and subsequently object to unfavorable conclusions drawn from it. *Waller v. United States*, 198 Ct.Cl. 908, 915, 461 F.2d 1273, 1277 (1972) (airman discharged for sexual perversion waived objection to evidence where airman consented to admission). Consequently, evidence that plaintiff owned a library of pornographic films, loaned the films to other Marines, and settled three civil actions that arose out of the surreptitious filming of the women was properly considered by the BOI.

B. *Sufficiency of the Evidence for Plaintiff's Discharge*

■ Plaintiff's challenge can only succeed if the final administrative decision was "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Pasternack v. United States*, 12 Cl.Ct. 707, 710 (1987). The burden lies with the plaintiff to prove that the decision was not based on sufficient evidence. *Gross v. United States*, 205 Ct.Cl. 605, 613, 505 F.2d 1271, 1275 (1974). Plaintiff, however, must first overcome the strong presumption that military officials acted correctly, lawfully, and in good faith. *Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979).

■ The standard of review for military discharge decisions is deferential. *Brown v. United States*, 184 Ct.Cl. 501, 503, 396 F.2d 989, 991 (1968). The scope of this court's review is very narrow. *See Bockoven v. Marsh*, 727 F.2d 1558, 1566 (Fed. Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984); *Murray v. United States*, 9 Cl.Ct. 71, 74 (1985). As the Court of Claims stated in *Sanders v. United States*:

> Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters. Although correction board decisions with pay consequences are reviewable here, it cannot be forgotten that Congress entrusted primary responsibility for the record-correction function to the service Secretaries acting through correction boards.

219 Ct.Cl. at 302, 594 F.2d at 813–14 (citations omitted).

Even if the evidence can be interpreted in the plaintiff's favor, the court is not empowered to substitute its own judgment for that of the military, especially when determining the suitability of an individual to be a military officer if reasonable minds could reach differing conclusions. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 814. The standard for determining whether the administrative decision is supported by substantial evidence

---

**2.** Plaintiff appears to challenge both the consideration of the evidence and the emphasis placed on it by the BOI. While plaintiff may have been unaware that the BOI would place some emphasis on this evidence, nothing in the record leads this court to conclude that plaintiff made a timely objection. *See* Administrative Record, vol. 1 at 343.

**3.** Plaintiff, during the BOI proceeding, and in response to questions by his own counsel, discussed the fact that he owned pornographic films and loaned them to subordinate personnel. *See* Administrative Record at 135, 275–76. Plaintiff also brought the settlement of the civil suits to the attention of the BOI of his own accord. *Id.* at 106–07.

is "not what the court would believe on a *de novo* appraisal, but whether the administrative determination is supported by substantial evidence on the record as a whole." *Brewer v. United States Postal Service,* 227 Ct.Cl. 276, 279, 647 F.2d 1093, 1096 (1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982). Whether a given conclusion is based on substantial evidence requires a "balanced consideration of all the evidence available and presented" which a reasonable man would find adequately supports the conclusion. *Buchanan v. United States,* 223 Ct.Cl. 291, 311–12, 621 F.2d 373, 383 (1980) (quoting *Smith v. United States,* 168 Ct.Cl. 545, 553 (1964)).

Substantial evidence on the record in this case supports the BOI's conclusion that a discharge was warranted. SECNAVINST 1920.6A encl. 3, pp. 2–3 §§ 1(b), (1)(b)(4) specifies that an officer may be separated for cause for "personal and professional conduct ... which is unbecoming an officer." Under the Secretary's instructions, such misconduct may be evidenced by "sexual perversion." "Sexual perversion" is defined to include "lewd and lascivious acts." *Id.* at encl. 1, p. 4 § 36(a). The BOI found that plaintiff committed such an act by secretly and intentionally videotaping nonconsenting women as they undressed. Plaintiff's assertion that he intended only to film the bathing suits to prevent theft was found to be "not worthy of belief." Plaintiff's willingness to settle the civil suits and possession of numerous x-rated movies substantiated the BOI's belief that plaintiff's version of the events was false.

Plaintiff asserts that the BOI's decision was based largely on his possession of pornographic films and his settlement of the civil suits. Plaintiff further alleges that no rational connection exists between this evidence and the conclusion that plaintiff was guilty of misconduct. However, the BOI's reliance on this evidence was proper because it was helpful in determining plaintiff's intent in filming the women. Plaintiff also alleges that aside from the refer-

ences to his ownership of pornographic movies and settlement of civil suits, the record contains no evidence supporting the BOI's conclusion that he was guilty of sexual perversion. The BOI did not, however, discharge plaintiff because of his possession of the movies or settlement of the suits. Instead, these factors merely provided additional evidence of plaintiff's wrongful intent in filming the women. The BOI's primary basis for determining plaintiff's intent was his testimony, in which he attempted to explain his reasons for placing a videocamera in the closet, and this explanation was not found to be credible. The BOI's finding concerning plaintiff's intent is virtually unreviewable because only the BOI had the opportunity to assess plaintiff's demeanor and credibility. *Hambsch v. Department of Treasury,* 796 F.2d 430, 436 (Fed.Cir.1986).

 This court concludes that the military relied on substantial evidence in discharging the plaintiff. The BOI properly considered the evidence of plaintiff's ownership of pornographic movies and settlement of civil suits. Furthermore, plaintiff waived any possible objection to consideration of this evidence. Accordingly, plaintiff has failed to fulfill his burden of showing legal error in the military's decision.

C. *Characterization of Plaintiff's Discharge*

 Plaintiff contends that even if the additional evidence was properly considered the characterization of his discharge was erroneous. First, plaintiff asserts that the BOI's recommendation that the discharge be "under other than honorable conditions" was erroneous because his conduct was not service-related. Plaintiff relies on *Doe v. Secretary of the Air Force,* 563 F.Supp. 4, 8–9 (D.D.C.1982), *aff'd without opinion,* 701 F.2d 221 (D.C. Cir.1983), in which the court held that military personnel may not be discharged under less than honorable conditions unless the conduct in question is service-related.[4]

---

4. The Supreme Court's recent holding in *Solorio v. United States,* —— U.S. ——, 107 S.Ct. 2924, 97

L.Ed.2d 364 (1987), overruling *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d

Plaintiff asserts that the BOI's conclusions were arbitrary, capricious and unsupported by sufficient evidence because he filmed the women in his private residence while he was off-duty, and thus the conduct was not service-related.

This court need not consider the implications of the BOI's recommendation that the plaintiff's discharge be under "other than honorable conditions." On August 21, 1985, the Assistant Secretary of the Navy upgraded the recommended characterization of plaintiff's separation to a general discharge, and he ultimately received a general discharge on September 3, 1985. It is this final administrative action that is the proper subject of judicial inquiry. Any possible prejudice that the plaintiff could have suffered by the BOI's recommendation was effectively cured by the Assistant Secretary's action. Plaintiff's challenge on these grounds is thus moot.

■ Secondly, plaintiff contends that his separation cannot be characterized as a general discharge unless his misconduct had a negative impact on the overall effectiveness of the Marine Corps. For this proposition, plaintiff relies on *Wood v. Secretary of Defense*, 496 F.Supp. 192, 195 (D.D.C.1980), (citing *Roelofs v. Secretary of the Air Force*, 628 F.2d 594, 598 (D.C. Cir.1980)). Plaintiff argues that "the BOI and the BCNR [had to] make specific findings based upon substantial evidence that the Plaintiff's conduct had a negative impact on the overall effectiveness of the military. A review of the Record shows that the effectiveness of the Marine Corps sustained little, if any, impact from the Plaintiff's conduct."

This court is not convinced that the cases relied on by plaintiff, *Roelofs* and *Wood*, support his contention under the circumstances of this case. The *Roelofs* court ruled that an Air Force regulation which provided that a discharge should normally be less than honorable for service members convicted of felonies by civilian authorities

was valid and that the Administrative Procedure Act entitled service members to a statement of reasons for less than honorable discharges. 628 F.2d at 598–601. *Roelofs* is simply inapplicable in the manner urged by the plaintiff in this case. In *Wood*, the district court merely relied on some discussion of discharge characterization procedures in *Roelofs* in ruling that "a discharge for civilian misconduct cannot be characterized as less than honorable absent a showing that the misconduct in some fashion adversely affects the military." 496 F.Supp. at 195.

Plaintiff overlooks an important factual distinction between the *Wood* case and the instant case. The plaintiffs in *Wood* were inactive members of the armed forces reserves, while the plaintiff here was on active duty during the period in question. As the *Wood* court noted, "[a] reservist is primarily a civilian and secondarily a military person." 496 F.Supp. at 196, n. 10. The fact that the plaintiffs in *Wood* were inactive reservists was a significant factor in the court's decision that civilian conduct had to have a negative impact on the military in order to receive an other than honorable discharge. As the *Wood* court stated, there is a "critically differing nexus with the military between the active duty serviceman and the inactive reservists [that] compels under *Roelofs* differing treatment of their discharge characterizations." 496 F.Supp. at 196.

This distinction is also reflected in the Marine Corps' own separation regulations which provide that:

> Conduct in the civilian community of a member of a Reserve component who is not on active duty or active duty for training may form the basis for characterization under other than honorable conditions only if such conduct affects directly the performance of military duties. Such conduct may form the basis of characterization as general (under

291 (1969) (offenses committed by service members must be "service connected" to be tried by court-martial), calls into question the holding in *Doe* relied on by plaintiff to challenge the characterization of his discharge. The Court in *So-*

*lorio* held that court-martial jurisdiction is based solely on the status of the accused as a member of the Armed Forces, and not the "service connection" of the offense charged. 107 S.Ct. at 2933.

honorable conditions) only if such conduct has an *adverse impact* on the overall effectiveness of the Marine Corps including military morale and efficiency. MARCORSEPMAN § 1004(c)(5) (emphasis added). Consequently, it is unclear whether a specific finding of adverse impact is required where an active duty Marine receives a general discharge.

Regardless of whether a determination of adverse impact was in fact required by applicable law in plaintiff's case, and contrary to the plaintiff's assertions, the BOI *did* make a specific finding that plaintiff's conduct had an adverse impact on the Marine Corps, although it did not use the words "adverse impact." In paragraph 17 of the BOI's findings and recommendations, the BOI wrote: "Major Snakenberg's actions demonstrated a reckless disregard for the high standard of moral integrity expected of a Marine Corps officer. He brought discredit on himself, the officer corps, and the Marines in the Beaufort community." Clearly, when the BOI made this finding it was concerned with the adverse impact of plaintiff's conduct. This court concludes that the BOI's finding of adverse impact, the discrediting of the Marine Corps and plaintiff in the eyes of fellow Marines and the local community, was sufficient.

■ Substantial evidence on the record supports the BOI's finding. Major Snakenberg's arrest and the civil suits that arose from this incident received considerable coverage in the local press. Such adverse publicity concerning plaintiff's conduct could rationally be found to have had an adverse impact on Marine Corps morale and effectiveness. Plaintiff acknowledges that the publicity concerning the incident could be construed as adverse impact and seeks to diminish its significance. It is sufficient for purposes of this court's review that the military chose to attach importance to the adverse publicity. This court cannot second-guess the propriety of this finding, once having determined that it was rational and based on substantial evidence in the record. Thus, the BOI properly considered the impact of plaintiff's conduct.

■ Finally, the characterization of the discharge by the Assistant Secretary of the Navy is the type of highly discretionary function that is practically "nonjusticiable." *Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir.1988). For instance, the Assistant Secretary has the discretion to release reserve officers who do not possess indefinite commissions, *Denton v. United States,* 204 Ct.Cl. 188, 200 (1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1949, 44 L.Ed.2d 449 (1975), and such decisions are not reviewable unless a regulation was violated. Historically, courts have been reluctant to interject themselves into the internal affairs of the Armed Forces. *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953). As the Supreme Court emphasized in *Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973), courts must exercise deference with respect to military judgments because "it is difficult to conceive of an area of governmental activity in which the courts have less competence." Because no violations of statute or regulation occurred in the characterization of plaintiff's separation, the court will not intrude upon the military's decision. Consequently, plaintiff's argument that the discharge was arbitrary and capricious and unsupported by substantial evidence because his conduct was neither service-related nor had a negative impact on the Marine Corps is of no avail.

## CONCLUSION

The military's action was neither arbitrary or capricious, was reasonable, and was based on substantial evidence. Plaintiff has not shown any violations of statutes or regulations in the discharge proceedings. The regulations do not require that notice be given to plaintiff before additional evidence is considered in BOI discharge hearings. Only the reasons for plaintiff's discharge, the misconduct allegations, had to be specified, as they were. Irrespective of whether plaintiff was adequately notified of the use of the evidence, plaintiff waived any objection by failing to make a timely objection and by utilizing the

same evidence in his defense. The BOI's finding concerning the plaintiff's intent in filming the women is virtually unreviewable because only the BOI had the opportunity to assess plaintiff's credibility and demeanor. Because the military did not violate any statute or regulation, this court will not intrude upon the military's determination that a general discharge was warranted.

For the foregoing reasons, the defendant's cross motion for summary judgment is granted. The plaintiff's motion for summary judgment is denied. The Clerk will dismiss the complaint. Each party will bear its own costs.